Rafael **SILVA RIVERA,** et al., **Plaintiffs**

v.

**STATE INSURANCE FUND CORPORATION, et al., Defendants.**

**Civil No. 03–1727(DRD).**

United States District Court, D. Puerto Rico.

July 31, 2006.

John F. Nevares, John F. Nevares & Assoc. PSC, San Juan, PR, for Plaintiffs.

Jo–Ann Estades–Boyer, Prado, Nunez & Associates, PSC, Jose Enrico Valenzuela–Alvarado, Department of Justice Office of the Solicitor General, Juan M. Rivera–Gonzalez, Ruben A. Rivera–Rosa, Sanchez Betances Sifre Munoz Noya & Rivera Law Offices, PSC, San Juan, PR, for Defendants.

## OPINION AND ORDER

DOMINGUEZ, District Judge.

On July 1, 2003 plaintiffs Rafael Silva Rivera and his wife, Joanne Fabricio Fernández, filed a complaint for injunctive relief, declaratory judgment, compensatory and punitive damages pursuant to 42 U.S.C. § 1983. The plaintiffs allege that their constitutional rights to freedom of speech and association were violated due to having been discriminated against because of their political affiliations. In addition, plaintiffs aver violations to the equal protection of the laws and due process of law, protected by the First, Fifth, and Fourteenth Amendments to the Constitution of the United States, as well as by the Article II, Sections 1, 6, and 7 of the Constitution of the Commonwealth of Puerto Rico. Plaintiffs contend these rights were infringed when the hearings granted to them by defendants were merely informal, non-adversarial, administrative proceedings held by the agency itself which, in turn, only afforded Mr. Silva Rivera the opportunity to present evidence to contradict his employer's purported reasons for dismissal (Docket No.21).

Pursuant to the complaint, the alleged Constitutional violations then became evident when outcome of these hearings became known. The administrative hearings resulted in the recommendation, from an hearing examiner, to terminate Mr. Silva Rivera from his employment. The plaintiffs state that the administrative procedure cannot be binding in as much as an interested party, his employer, remains the ultimate decision-maker.[1] Plaintiffs also allege that the defendants are liable under Article 1802 of the Puerto Rico Civil Code, P.R. LAWS ANN. tit. 31, § 5141, since Mr. Silva Rivera was deprived of his functions and responsibilities as a career employee, and, as a result, he felt segregated and humiliated in front of other employees. Plaintiffs allegedly suffered great physical, moral, and mental distress. Subsequently, the defendants filed a motion for summary judgment asserting the applicability of the doctrines of *res judicata* and/or *collateral estoppel*, thus, barring plaintiffs' civil rights claims in the instant case.

On May 10, 2006, the Court issued an order (Docket No.52) referring this matter to Magistrate Judge Gustavo Gelpí for his Report and Recommendation ("R & R"). Magistrate Judge Gelpí, in turn, issued his R & R on May 11, 2006 (Docket No. 53) wherein he recommends the Court grant defendants' *brevis* disposition and, ultimately, dismiss plaintiffs' complaint. Therein, the Magistrate clearly warned all parties that they had ten (10) days to object to the R & R.[2] Accordingly,

---

1. Plaintiff, however, forgets that the decision may later be challenged before the Appeals Board of the State Insurance Fund Corporation. That decision, in turn, may further be appealed before the Puerto Rico Court of Appeals pursuant to P.R. Laws Ann. tit. 3 § 2171 (local APA law).

2. The Court notes that part of plaintiffs' objections question the fact that a memorandum of

law regarding whether an England Reservation of federal rights (Docket No. 21) was filed in the instant case and was never decided by the Court. Pursuant to *England v. Louisiana Board of Medical Examiners*, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964), a plaintiff must first file in federal court before filing in state proceedings and then may subsequently advice the state court that it reserves the right to litigate its federal

plaintiffs timely filed their objections to the R & R (Docket No. 54). Therefore, defendants filed their opposition to the plaintiffs' objection to Magistrate Judge Gelpi's R & R on June 15, 2006 (Docket No. 58). The Court is ready to rule.

## I

The District Court may refer dispositive motions to a United States Magistrate Judge for a Report and Recommendation. 28 U.S.C. § 636(b)(1)(B) (1993); FED. R.CIV.P. 72(b); L.CIV.R. 72(b). See *Mathews v. Weber*, 423 U.S. 261, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976). Of course, an adversely affected party may contest the Magistrate's Report and Recommendation by filing its objections within ten (10) days after being served a copy thereof. See L.CIV.R. 72(d); FED.R.CIV.P. 72(b). Moreover, 28 U.S.C. § 636(b)(1), in pertinent, part provides that:

> Within ten days of being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate.

In the instant case, the "R & R" correctly and clearly points out that any objections to the motion must have been filed with the Clerk of the Court "within ten (10) days after being served with a copy thereof". L.CIV.R. 72(c); see also 28 U.S.C. § 636(b)(1). Further, the "written objections [ ] shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the legal basis for such objections". Local Civil Rule 72(c). "Failure to file objections within the specified time waives the right to appeal the District Court's order." See *United States v. Mitchell*, 85 F.3d 800, 803 (1st Cir.1996); *United States v. Valencia–Copete*, 792 F.2d 4, 6 (1st Cir.1986). "Absent objection by the plaintiffs, the district court had a right to assume that plaintiffs agreed to the magistrate's recommendation." *Tem-*

claim in that federal court, thus, allowing the federal court to engage in a *Pullman* abstention (*see Railroad Commission v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941)). The *Pullman* abstention, in turn, permits the federal court to obtain from the state court an interpretation of the state law involved in the case. This procedure is widely known as the *England Reserve*, allowing for a plaintiff to return to the federal forum for adjudication of the federal question after the state court has decided the issue of state law. *See also Casa Marie, Inc. v. Superior Court of Puerto Rico*, 988 F.2d 252, 266 n. 16 (1st Cir.1993); *Granados Navedo v. Acevedo*, 752 F.Supp. 523 (D.P.R.1990). Upon review of the record, the Court notes that, when the filing system changed from a paper filing system to the now present electronic filing system (CM/ECF), the request made at docket number 21 was accidentally wrongfully terminated. Notwithstanding, even if the Court

had decided the England Reservation issue prior to the motion for summary judgment referral, the Court would have still reached the same conclusion barring the claim under *res judicata* as it reaches today. The plaintiff in this case can hardly execute an efficient England Reservation as to disciplinary issues already fully litigated within the state administrative system unless he first timely made a federal rights reserve in the federal court. Therefore, the reserve must be timely made in federal court before the state proceedings ensue. Plaintiff has not shown that the reserve was made prior to voluntarily engaging in the administrative disciplinary proceedings. As to making a reserve in the instant case, it is unnecessary since the Court is entertaining the case and decides pursuant to federal law. For the reasons stated in this note, Docket No. 21, as to an England Reserve, is **DENIED.**

*pleman v. Chris Craft Corp.*, 770 F.2d 245, 247 (1st Cir.), *cert. denied,* 474 U.S. 1021, 106 S.Ct. 571, 88 L.Ed.2d 556 (1985). Moreover, "[f]ailure to raise objections to the Report and Recommendation waives that party's right to review in the district court and those claims not preserved by such objection are precluded on appeal." *Davet v. Maccarone,* 973 F.2d 22, 30–31 (1st Cir.1992). See also *Henley Drilling Co. v. McGee,* 36 F.3d 143, 150–151 (1st Cir.1994) (holding that objections are required when challenging findings actually set out in magistrate's recommendation, as well as magistrate's failure to make additional findings); *Lewry v. Town of Standish,* 984 F.2d 25, 27 (1st Cir.1993) (stating that "[o]bjection to a magistrate's report preserves only those objections that are specified"); *Keating v. Secretary of H.H.S.,* 848 F.2d 271, 275 (1st Cir.1988); *Borden v. Secretary of H.H.S.,* 836 F.2d 4, 6 (1st Cir.1987) (holding that appellant was entitled to a de novo review, "however he was not entitled to a *de novo* review of an argument never raised"). See generally *United States v. Valencia–Copete,* 792 F.2d 4, 6 (1st Cir.1986); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603, 605 (1st Cir.1980).

After conducting a *de novo* review of the record, the Court finds that the R & R thoroughly and correctly addressed the issues presented by the defendant in its motion, except as herein clarified. *See Gioiosa v. United States,* 684 F.2d 176 (1st Cir.1982) (district court was required to make *de novo* determination of those portions of magistrate's report objected to, which recommended that habeas corpus petition be denied); compare *Paterson–Leitch v. Massachusetts Elec.,* 840 F.2d 985, 990–91 (1st Cir.1988) ("At most, the party aggrieved is entitled to a review of the bidding rather than to a fresh deal. The rule does not permit a litigant to present new initiatives to the district judge. We hold categorically that an unsuccessful party is not entitled as of right to *de novo* review by the judge of an argument never seasonably raised before the magistrate."). As such, for the reasons stated below, the Court now **ADOPTS *in toto*** the Magistrate's R & R and thus **DISMISSES WITH PREJUDICE** plaintiffs' federal claims and **WITHOUT PREJUDICE** all state claims.

## II

 Magistrate Judge Gustavo Gelpí properly and correctly found appropriate the dismissal of the plaintiffs' Section 1983 claims of political discrimination. In an action based on political discrimination, the plaintiff bears the initial burden of proof. The plaintiff needs to establish that his or her political affiliations were a "substantial or motivating" factor behind the challenged employment action[s]. *See Mt. Healthy School Dist. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). The defendant, in turn, may present evidence of a nondiscriminatory reason. *Padilla–García v. Rodríguez,* 212 F.3d 69, 78 (1st Cir.2000). Said evidentiary framework readily may be used in the summary judgment context. See *Texas v. Lesage,* 528 U.S. 18, 19, 120 S.Ct. 467, 145 L.Ed.2d 347 (1999); *Vélez–Rivera v. Agosto–Alicea,* 437 F.3d 145, 153–154 (1st Cir. 2006). Where a defendant, in Rule 56(c) context, presents competent evidence of non-discriminatory reasons for the personnel action taken, plaintiff is obligated to show to the Court that a genuine issue of fact nonetheless lies as to said reason's veracity. See *Vélez–Rivera,* 437 F.3d. at 155. This threshold may be reached in one of two ways; either by presenting conflicting evidence which creates a genuine factual issue as to whether political consideration was a motivating or substantial factor, or, in the alternative, the plain-

tiff can demonstrate that the record itself generates material issues of fact as to the presence of political motivation being a substantial or motivating factor.

Plaintiffs object the Magistrate's R & R on the following grounds: (1) the Magistrate erred when granting defendant's motion for summary judgment that did not address the Court's order for a motion based on the England Reservation doctrine; (2) when not considering plaintiffs' request for discovery made during a status settlement conference (Docket 39); (3) when granting the defendants' motion for summary judgment and disposing of the issues without plaintiffs commencing the discovery proceedings. All these factors were duly considered by the Magistrate Judge, except as herein amplified, and the Court, after a *de novo* review, concurs with his recommendation.

Silva failed to present or even make arguments outside of those made in his opposition to the motion for summary judgment. He merely rehashed the arguments he had already raised thereto and simply was unsuccessful providing the Court with any new evidence. Silva failed to establish how the defendants' motion for summary judgment impeded him from properly confronting the evidence, more so when the vehicle of a Fed.R. Civ. P 56(f) was available to him if he considered defendants' actions unjust. Moreover, he did not proffer any further evidence or argumentation to move the Court to conclude in his favor. Finally, plaintiffs did not supply the Court with any new reasoning or case law—except the exclusion of the already admitted exhibits—to support their position that they never began their discovery because the Court never issued a case management order in order commence discovery proceedings.

To the contrary, Magistrate Gustavo Gelpí correctly found that defendant's submitted exhibits in support of their statement of uncontested facts were produced as part of the regular course of business activities, were trustworthy, reliable, and/or relevant. The Magistrate was equally correct when, and after utilizing said admitted exhibits, he concluded that plaintiff Silva Rivera failed to sustain a *prima facie* case of political discrimination.

### The Non–Discriminatory Reasons

In the case at bar, the evidence undoubtedly shows that plaintiff was first suspended from employment for thirty (30) days in 2002 (Exhibit 13, Docket 35). This action was taken after an incident of improper conduct in his working environment and working premises.[3] The determination was never challenged by plaintiff. (Exhibit 5, Docket 35 (letter of charges) and Exhibit 6, Docket 35 (hearing examiner's report)). A second action resulted out of improper conduct incurred in by plaintiff which was also seen by a hearing officer.[4] (Exhibit 11, Docket 35 (letter of charges) and Exhibit 12, Docket 35 (hearing examiner's report)). In a further review of the reports by the hearing officers,

---

3. Silva's improper behavior on March 1, 2002 included his aggressive manner in the parking lot facilities around 7:15 am. He honked the horn of his car to Mr. Gilberto Rivera Cruz (employee of SIFC) and with foul language incited/challenged him to fight. It was necessary to call the local police in order to regain order. The scene was witnessed by private security officers, other fellow employees, and clients of SIFC.

4. On October 8, 2002 around 10:30 am, Silva, looking for Mr. Carlos Javier Rivera–Rivera (employee of SIFC), barged into Mr. Alicea's office. When realizing Rivera–Rivera was not in the office, Silva started screaming about the supposed deficiencies of Rivera–Rivera violating the required procedures of internal administrative complaints followed by SIFC. This event was witnessed by other employees and clients of the SIFC.

the records show the administrative officers declined to provide credibility or weight to Silva's allegations regarding the incident (Exhibit 6 at ¶ 7, p. 9; Exhibit 12 ¶ 6, p. 5). Both hearing officers independently and separately rejected Silva's allegations of political discrimination against him (Exhibit 6 at ¶ 22, p. 7; Exhibit 12 at ¶ 7, p. 5). Furthermore, the record lacks any evidence suggesting even an appearance of impartiality or bias behavior in the hearing officers. Thus, the plaintiffs' procedural Due Process rights were not violated. Both of the agency's administrative decisions became final and were never appealed (Exhibit 14, Docket 35–certification that no appeal was filed).

■ The Magistrate Judge did not err when granting the motion for summary judgment as to plaintiffs' federal claims.[5] As clearly noted, although in Puerto Rico "[e]ntirely too often, the political party assuming office terminates the employment of public employees who are affiliated with the party going out of power", *Sánchez López v. Fuentes Pujols*, 375 F.3d 121, 125 (1st Cir.2004), the record is devoid suggesting the above discussed conduct in the instant case. From a *Mt. Healthy* /Rule 56 perspective, any such speculation would be improper by the Court. *Vélez–Rivera*, 437 F.3d at 154. In fact, plaintiff in the instant case voluntarily subjected his claims to the hearing examiners at the administrative level, and, upon said examiners reaching the results, plaintiff chose not to exercise his right to appeal before the administrative appellate forum, the Appeals Board of the SIFC, even when plaintiff was made privy to such a right. Docket No. 25, Exhibit VIII

(letter from the State Insurance Fund Corporation Administrator, Mr. Nicolas Lopez Pena, informing plaintiff of his decision to terminate his employment pursuant to the hearing examiner's report and advising Mr. Silva of his right to file an appeal, within thirty (30) days, before the Appeals Board of the SIFC). As a result of not filing such an appeal, Mr. Silva permitted that the decision reached by the Administrator to become final and unappealable, thus, precluding this forum from adjudicating his rights arising from the improper conduct and termination due to *res judicata/admnistrata*. Finally, as for the other defendants being sued in their personal capacity, the same analysis applies, thereby also precluding the Court from addressing those claims pursuant to collateral estoppel limitations.[6] *See University of Tennessee v. Elliott*, 478 U.S. 788, 797, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986) ("it is sound policy to apply principles of issue preclusion to the factfinding of administrative bodies acting in a judicial capacity"); *United States v. Utah Construction and Mining Co.*, 384 U.S. 394, 422, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966) ("[w]hen and administrative agency is acting in a judicial capacity and resolved disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply res judicata to enforce repose"); *Diaz–Seijo v. Fajardo Velez*, 397 F.3d 53, 55 (1st Cir.2005) ("[c]ommon-law res judicata doctrine may still apply in section 1983 actions, depending upon a balancing of factors including the interests involved, the power of the agency to decide the claims, and the adequacy of agency procedures") (citing *Astoria Fed.Sav. &*

---

5. Plaintiffs' supplemental claims should likewise be dismissed without prejudice.

6. Plaintiff failed to provide any evidence at summary judgment level to the effect that other similarly situated employees incurring in similar misconduct were not disciplined in the same fashion.

*Loan Ass'n v. Solimino*, 501 U.S. 104, 111 S.Ct. 2166, 115 L.Ed.2d 96 (1991)).

The Court determines that res *judicata/adminsitrata* is applicable since plaintiff voluntarily engaged in the administrative procedure, received an unfavorable decision, failed to appeal (both at the administrative and the judicial levels), allowed the decision to become final and, only after the decision became final, makes a collateral attack on them. The decisions were run of the mill disciplinary cases which, unfortunately for plaintiff, bind the Court as a "non-discriminatory", valid reason which is final. The plaintiff further failed to show that other similarly situated employees did not receive the same treatment. The Court sees no reason not to apply *res judicata.* The agency procedures, considering appeals, were adequate; further determining just cause in disciplinary cases is within the providence of the administrative body and, moreover, defendant engaged voluntarily the administrative gears. The above described factors favor the application of *res judicata.*

### III

The Court need not to go further for it refuses to write "at length to no other end than to hear its own words resonate." *See Lawton v. State Mut. Life Assur. Co. of Am.,* 101 F.3d at 220. "Where as here, a [Magistrate] has produced a first-rate work product, a reviewing tribunal should hesitate to wax longiloquence simply to hear its own words resonate." *In re San Juan Dupont Plaza Hotel Fire Litig.,* 989 F.2d at 38. Therefore, the Court **ADOPTS** the Magistrate's R & R and thus **DISMISSES WITH PREJUDICE** plaintiffs' federal claims and **WITHOUT PREJUDICE** all state claims. Henceforth, defendants' motion for summary judgment is **GRANTED.**

Judgment shall be entered accordingly. **IT IS SO ORDERED.**