UNITED STATES of America,

v.

Trina WILLIAMS.

Crim. No. 89–0501 (OG).

United States District Court,
District of Columbia.

Oct. 22, 1993.

Joan Draper and John M. Facciola, Asst. U.S. Attys., Washington, DC, for plaintiff.

Trina Williams, pro se.

## MEMORANDUM

GASCH, Senior District Judge.

Defendant lists an exhaustive battery of reasons why this Court should vacate, set aside or correct her sentence pursuant to 28 U.S.C. § 2255. In support of her motion, defendant alleges (1) that her right to due process was violated because she was held without a criminal information or indictment for 16 days; (2) that she was denied counsel during the initial arrest and investigation phase of this proceeding; (3) that she received ineffective assistance of counsel; and (4) that she provided substantial assistance to the authorities who neglected to file a motion to reduce her sentence.

Also before this Court is defendant's motion to amend her Section 2255 motion, adding to her list of grievances that she is innocent by reason of duress. She also argues that her guilty plea was itself the product of duress and coercion and thus, the assistance of her counsel was ineffective because he failed to spot and argue this alleged coercion. Defendant further seasons her proposed amendment with more alleged errors and omissions on the part of her counsel.

Finally, defendant requests an extension of time to file opposition papers to the government's response to her Section 2255 motion.

## I. Background [1]

Defendant was arrested in the gray morning hours of December 5, 1989. She was en route to North Carolina from New York City when her bus made a scheduled stop in Washington, D.C. shortly after 4:00 a.m. A fellow traveler alerted a security guard that a female passenger boasted of possessing drugs and a gun. The security guard, in turn, informed the police who boarded the bus and approached the defendant. During a brief conversation with the police, defendant rifled through her tote bag apparently searching for identification. From the tote, she removed a small plastic bag. The police asked if they could look in the bag and the defendant consented. Inside the bag, the police discovered 47.4 grams of crack cocaine. The defendant was placed under arrest, and a subsequent search of her tote bag revealed a loaded handgun.[2]

On February 23, 1990, defendant pleaded guilty to Unlawful Possession with Intent to Distribute Five Grams or More of Cocaine Base pursuant to 21 U.S.C. §§ 841(a) and 841(b)(1)(B)(iii), as well as Using and Carrying a Firearm in Relation to a Drug Trafficking Offense pursuant to 18 U.S.C. § 924(c). On September 7, 1990, defendant was sentenced to 147 months imprisonment. Thereafter, this Court granted defendant's motion to depart from the Sentencing Guidelines, and on July 22, 1991, reduced defendant's sentence to 120 months because of her extraordinary personal history and family background.

## II. Discussion

■ Defendant's first two allegations, having been held for 16 days prior to indictment and having been denied counsel during her arrest and the initial investigation, both concern supposed violations which occurred prior to her guilty plea and do not affect the voluntary nature of that plea. Therefore, those issues cannot be raised collaterally. As the Supreme Court noted in *Tollett v. Henderson*, 411 U.S. 258, 267, 93 S.Ct. 1602, 1608, 36 L.Ed.2d 235 (1973):

[A] guilty plea represents a break in the chain of events which has preceded it in

---

1. TR.I refers to the transcript of defendant's guilty plea, February 23, 1990. TR.II refers to the transcript of defendant's sentencing, September 7, 1990.

2. The government stated that the gun was a .9 millimeter, however, during the plea colloquy, defendant corrected the government, stating that the weapon was actually a .38 caliber revolver. TR.I at 12.

the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann*.

*Tollett*, 411 U.S. at 267, 93 S.Ct. at 1608.[3]

Although *Tollett* concerns state prisoners' *habeas corpus* petitions, the same argument has been adopted in Section 2255 motions. *See Bass v. United States*, 739 F.2d 405, 406 (8th Cir.1984) ("Under Section 2255, after a guilty plea, the focus of collateral attack is limited to the nature of counsel's advice and the voluntariness of the plea." (citing *Tollett*, 411 U.S. at 266, 93 S.Ct. at 1608)); *Gioiosa v. United States*, 684 F.2d 176, 179 (1st Cir.1982) ("[a] guilty plea operates to waive all non-jurisdictional defects that might be attacked in a § 2255 motion").[4]

■ Because defendant failed to raise these issues prior to her plea of guilty, and twice in open court declared that she was pleading guilty because she was guilty and for no other reason, TR.I at 4, 9, she cannot now raise these allegations in the context of a Section 2255 motion. Rather, defendant may only challenge the voluntary and intelligent character of the guilty plea by showing that her counsel was inadequate. *Tollett*, 411 U.S. at 267, 93 S.Ct. at 1608. It is this inadequacy which defendant challenges in both her original Section 2255 motion and her proposed amendment to that motion.

The standard to be used in a collateral charge of ineffective assistance of counsel in a guilty plea is laid out in *Hill v. Lockhart*,

474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985), which applies the holding of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), to such pleas. *United States v. Del Rosario*, 902 F.2d 55, 57 (D.C.Cir.), *cert. denied*, 498 U.S. 942, 111 S.Ct. 352, 112 L.Ed.2d 316 (1990). For defendant to be successful, *Hill* requires that she demonstrate: (1) "[c]ounsel's representation fell below an objective standard of reasonableness." *Hill*, 474 U.S. at 57, 106 S.Ct. at 369; and (2) "[b]ut for counsel's errors, [she] would not have pleaded guilty and would have insisted on going to trial." *Id.*, 474 U.S. at 59, 106 S.Ct. at 370 (footnote omitted). *See also Strickland*, 466 U.S. at 687–688, 694, 104 S.Ct. at 2064–2065, 2068 (discussing a similar two-part test).

In her motion, defendant fires a volley of alleged inadequacies at her counsel. Because she lists so many purported errors and omissions, it is best to list them first and then address them one by one, saving defendant's more weighty charges of duress and coercion to the end.

To begin, she accuses counsel of failing to move for the suppression of evidence garnered in a supposedly illegal search. She accuses counsel of not knowing of her deficient I.Q. and history of victimization. Defendant also charges that counsel allegedly neglected to object to her presentence report and that counsel failed to submit evidence that she provided substantial assistance to the government. She faults counsel for a lack of investigative diligence and she accuses counsel of refusing to allow her to withdraw her guilty plea, supposedly after she learned that she faced twelve years in prison as opposed to the five years counsel is purportedly to have promised her.

In defendant's proposed amendment to her Section 2255 motion, she further accuses her

---

3. *McMann v. Richardson*, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970) (a defendant who alleges that he pleaded guilty because of a prior coerced confession is not, without more, entitled to *habeas corpus* relief unless he demonstrates gross error on the part of his counsel in advising him to plead guilty rather than standing trial).

4. *See also United States v. Adams*, No. 92–3176, 1993 WL 52609 (D.C.Cir. February 19, 1993) (*per curiam*) (in an unpublished disposition, which cannot be cited as precedent under D.C. Circuit Local Rule 11(c), the U.S. Court of Appeals for the District of Columbia Circuit also applied *Tollett* to a Section 2255 proceeding, holding that, because a defendant pleaded guilty, any claim stemming from an allegedly illegal search and seizure must be based on the Sixth Amendment right to counsel).

lawyer of not explaining to her the impact of a guilty plea, not objecting to her being tried as an adult (defendant claims to have been a juvenile at the time of the offenses), and not objecting to the Court's consideration, at sentencing, of her prior juvenile criminal history. Defendant further claims that counsel failed to present her duress defense or argue that her plea was coerced. Finally, she charges counsel himself with coercion in forcing her to plead guilty.

■ The Court has fully reviewed defense counsel's performance and finds no merit in defendant's contentions. Although the Court is blessed with 20/20 hindsight in examining counsel's actions, it realizes that counsel was not clairvoyant and therefore, it must "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *United States v. Loughery*, 908 F.2d 1014, 1018 (D.C.Cir.1990), *quoting Strickland*, 466 U.S. at 690, 104 S.Ct. at 2066.

Neither defendant's argument nor the evidence in the record suggests that counsel's conduct in not moving to suppress evidence was "gross error." *McMann v. Richardson*, 397 U.S. 759, 772, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763 (1970). Thus, defendant is entitled to no relief on this ground. Furthermore, counsel was aware of defendant's low I.Q., as well as her brutal family history and aggressively argued for a downward departure for those reasons.[5] TR.II at 4–5. The transcript from the sentencing also indicates that counsel reviewed the presentence report and discussed it with defendant. TR.II at 2. Furthermore, there appears to be no cognizable reason, and defendant does not suggest one, why counsel should have objected to the report. Also, the record does not reflect any substantial assistance to the government in the prosecution or apprehension of another person. Moreover, as discussed at pages 6 and 7, *infra*, only the government may move for such a downward departure for substantial assistance. *See* 18 U.S.C. § 3553(e); United States Sentencing Guidelines Manual ("U.S.S.G.") § 5K1.1; Fed.R.Crim.P. 35(b).[6]

As for defendant's charge concerning the withdrawal of her plea, the transcript reveals that the mandatory minimum sentence for both offenses was twice explained to the defendant. TR.I at 3–4, 15. Furthermore, defendant herself expressed her understanding of the mandatory minimum and her continued desire to plead guilty:

> THE COURT: So, understanding, Ms. Williams, that the minimum sentence under the Guidelines that you could get on this plea of guilty is 6.5 years on the drug charge plus five years on the gun charge—you understand that?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Understanding that, do you still wish to plead guilty?
>
> THE DEFENDANT: Yes, sir.

TR.I at 15.

It is obvious not only that defendant understood the mandatory minimum, but that she had ample opportunity to stop entry of the plea if she so desired. Also, the impact of defendant's guilty plea was carefully explained to her, and counsel stated that he too had reviewed the ramifications of a guilty plea with defendant. TR.I at 2–5. As for defendant's claim that she was a juvenile at the time of the offenses, the record indicates that she was born March 5, 1971, making her over eighteen on December 5, 1989, the date of the offenses. Likewise, her juvenile criminal history was properly before the Court, as defendant was confined as a juvenile for more than 60 days and was released within five years of the instant offenses. *See* U.S.S.G. § 4A1.2(d)(2).

The Court next turns to defendant's claims of duress and coercion, which lie at the heart of her ineffective assistance of counsel allegations. Defendant argues that her guilty plea, and indeed the commission of the crimes themselves, were the product of duress and coercion. Defendant maintains that Kevin

---

5. As discussed at page 7, *infra,* counsel later successfully moved for a downward departure from the mandatory minimum sentence on the basis of defendant's family history.

6. Defendant was, however, given a reduction in sentence for acceptance of responsibility. *See* U.S.S.G. § 3E1.1.

Williams, Kashawn Anderson and Charlie Watts forced her to commit the crimes and later forced her to plead guilty.

■ The defense of duress excuses criminal conduct only where the defendant committed the illegal acts under an unlawful threat of immediate death or serious bodily injury. A threat of future harm, or a threat made before the commission of the illegal act, is generally not sufficient. *United States v. Jenrette,* 744 F.2d 817, 820, 831 n. 6 (D.C.Cir.1984), *cert. denied,* 471 U.S. 1099, 105 S.Ct. 2321, 85 L.Ed.2d 840 (1985). *See also United States v. Bailey,* 444 U.S. 394, 410, 100 S.Ct. 624, 635, 62 L.Ed.2d 575 (1980) ("[I]f there was a reasonable, legal alternative to violating the law, 'a chance both to refuse to do the criminal act and also to avoid the threatened harm,' the defenses will fail." (citation omitted)).

■ The record in this proceeding discloses no evidence of duress, nor does the record in the proceedings surrounding Kevin Williams, whom defendant named as a possible codefendant and one of her coercive tormentors. *See United States v. Kevin Williams,* Crim. No. 90–0002 (D.D.C.1990). Even so, this line of argument was raised at sentencing, where counsel stated that because of her low I.Q. and history of victimization, defendant's sentence should be reduced as she may have been psychologically or mentally "coerced by Kevin Williams." TR.II at 4–5. However, the coercion of which counsel spoke does not rise to the level of imminent death or physical harm as contemplated in *Jenrette.* Moreover, as noted previously, upon pleading guilty in open court, defendant waives all claims which do not go to the voluntary and intelligent character of the plea. *See Tollett,* 411 U.S. at 267, 93 S.Ct. at 1608; *Bass,* 739 F.2d at 406.

■ Defendant next contends that Messrs. Williams, Anderson and Watts coerced her into pleading guilty. Unlike the defense of duress to the underlying criminal acts, an allegation of coercion at the plea stage goes directly to the voluntariness of the plea and is a proper basis for collateral attack as contemplated in *Tollett* and *Bass.*

■ Coercion rising to a level which would render a plea involuntary means "that it creates improper pressure that would be likely to overbear the will of some innocent persons and cause them to plead guilty. Only physical harm, threats of harassment, misrepresentation, or 'promises that are by their nature improper as having no proper relationship to the prosecutor's business (*e.g.,* bribes)' render a guilty plea legally involuntary." *United States v. Pollard,* 959 F.2d 1011, 1021 (D.C.Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 322, 121 L.Ed.2d 242 (1992) (citations omitted).

*Pollard* concerns the plea agreement of the Israeli spy Jonathan Jay Pollard and that of his wife. Mr. Pollard argued that his plea was coerced since it was linked to his wife's plea. Pollard was forced to accept the government's offer, he claimed, so that his wife would not lose the lenient agreement the government had worked out with her. The Court of Appeals denied Pollard's motion, the case turning on coercion in the context of the constitutionality of "wired" or linked pleas. *Pollard,* 959 F.2d at 1021–1022.

The thrust of the case law in this area, like *Pollard,* concerns allegations of coercion either against the government or the defense counsel. Few deal with coercion by a third party or codefendant. Nevertheless, the inquiry is the same, focusing on the voluntariness of the plea, for "[a] guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void. A conviction based upon such a plea is open to collateral attack." *Machibroda v. United States,* 368 U.S. 487, 493, 82 S.Ct. 510, 513, 7 L.Ed.2d 473 (1962). Also, not insignificantly, defendant never appealed her sentence, and *Pollard* requires that if coercion is raised for the first time in a collateral challenge, the defendant "is obliged to show a good deal more than would be sufficient on a direct appeal from [her] sentence." *Pollard,* 959 F.2d at 1020.

■ As with defendant's other claims, the record again fails to support her. In fact, she herself attested to the voluntariness of her plea:

THE COURT: Has anybody threatened you or coerced you as a result of which you are entering this plea of guilty?

THE DEFENDANT: No, sir.

THE COURT: Are you entering the plea voluntarily and of your own free will because you are guilty and for no other reason?

THE DEFENDANT: Yes, sir.

TR.I at 4.

Furthermore, both this Court and defendant's attorney reviewed the transcript of Kevin Williams' trial. TR.I at 12, 13. This transcript, as well as the underlying record in Kevin Williams' case, pointed to no evidence whatsoever of coercion.

The Court recognizes that a person with a low I.Q. and tragic history, such as defendant's, may be more susceptible to duress and coercion than others. Nevertheless, nothing at all in the record points to coercion or duress. Moreover, defendant raises these issues for the first time in her Section 2255 motion. If there were any time when she should have felt free from the shadow of duress and coercion, it should have been when defendant was in the custody and protection of the Court and in close contact with her attorney. Instead, defendant admitted her guilt many times and declared in open court that her plea was voluntary and untainted by coercion. In the end, there is not a scintilla of evidence that defendant's guilty plea was the product of duress or coercion or that her counsel had any part in this alleged coercion.

Indeed, when the entire record is thoroughly reviewed, it is apparent that defense counsel was at all times well prepared and fully informed on the facts and the law. It would appear that he kept the defendant fully aware of all aspects of her case, and ultimately, nothing points to a lack of diligence or effort on his part. Furthermore, when questioned by the Court, the defendant expressed full satisfaction with her lawyer's services. TR.I at 3. Therefore, this Court must conclude that counsel's efforts comported with and exceeded any objective standard of reasonableness. Also, it is neither rational nor conceivable from a review of the record, that but for counsel's alleged errors she would not have pleaded guilty. Because defendant has not satisfied either prong of the *Hill* test, her motion with respect to ineffective assistance of counsel fails. *See Hill,* 474 U.S. at 57, 59, 106 S.Ct. at 369, 370.

Defendant's final allegation charges that the government neglected to file a substantial assistance motion pursuant to Federal Rule of Criminal Procedure 35(b).[7] By the very terms of Rule 35(b), such a motion is the government's to make and, absent a showing of some constitutional irregularity, this Court is powerless to intervene.

The Supreme Court has recently addressed almost the identical substantial assistance issue in *Wade v. United States,* —— U.S. ——, 112 S.Ct. 1840, 118 L.Ed.2d 524 (1992). In *Wade,* the defendant moved for a reduction of sentence on the ground of substantial assistance to the government pursuant to 18 U.S.C. § 3553(e) and U.S.S.G. § 5K1.1. Like Rule 35(b), both the statute and the guideline allow the court, upon motion of the government, to depart from the Sentencing Guidelines by reason of a defendant's substantial assistance in investigating or prosecuting another person.

The Supreme Court denied Wade's motion, holding that these statutes gave "the Government a power, not a duty, to file a motion when a defendant has substantially assisted." *Wade,* —— U.S. at ——, 112 S.Ct. at 1843.

---

**7.** Federal Rule of Criminal Procedure 35(b) states:

The court, on motion of the Government made within one year after the imposition of the sentence, may reduce a sentence to reflect a defendant's subsequent substantial assistance in the investigation or prosecution of another person who has committed an offense, in accordance with the guidelines and policy statements issued by the Sentencing Commission pursuant to section 994 of title 28, United States Code. The court may consider a government motion to reduce a sentence made one year or more after imposition of the sentence where the defendant's substantial assistance involves information or evidence not known by the defendant until one year or more after imposition of sentence. The court's authority to reduce a sentence under this subsection includes the authority to reduce such sentence to a level below that established by statute as a minimum sentence.

The Court further held that a claim that a defendant merely provided substantial assistance will not entitle that person to a remedy or even to discovery or an evidentiary hearing. A defendant would, however, be entitled to relief if he could demonstrate that there was no rational relationship between the government's refusal to move for a reduction and a legitimate governmental end. Similarly, such defendant would also be entitled to relief if the government refused to file the motion for constitutionally suspect reasons, such as race or religion. *Id.,* —— U.S. at ——, 112 S.Ct. at 1844.

■ In the present case, defendant has not alleged, nor does the record support, a constitutionally suspect reason or irrational basis for the government's failure to file a motion to reduce her sentence under Rule 35(b). Therefore, her motion for collateral relief is denied.

Furthermore, it is significant that at defendant's guilty plea, this Court gave defendant an opportunity to file a motion to reduce sentence. Defendant filed such a motion, and the Court granted it on the grounds of extraordinary personal history and family background. Defendant's sentence was subsequently reduced from 147 to 120 months. *See United States v. Trina Williams,* Crim. No. 89–0501 (Memorandum–Order D.D.C. July 22, 1991). In that Memorandum–Order, the Court noted that, although she implicated Kevin Williams in the offense, no motion was made for a reduction of sentence on that ground. *Id.* at 4.

Finally, upon careful review of the entire record of this case, it is the Court's judgment that no evidentiary hearing is required in this matter pursuant to Federal Rules Governing Section 2255 Proceedings 4(b) and 8(a). *See also United States v. Sayan,* 968 F.2d 55, 66 (D.C.Cir.1992); *United States v. Green,* 680 F.2d 183, 184 (D.C.Cir.1982), *cert. denied,* 459 U.S. 1210, 103 S.Ct. 1204, 75 L.Ed.2d 445 (1983) (both to the same effect).

WHEREFORE, in view of the foregoing, the defendant's motions are denied. An appropriate order is attached.

**ORDER**

For the reasons set forth in the Memorandum dated October 21, 1993, it is by the Court this 22nd day of October, 1993

ORDERED, that defendant's motion brought pursuant to 28 U.S.C. § 2255 be, and the same hereby is, denied; and it is further

ORDERED, that defendant's motion for leave to file an amendment to her § 2255 motion, and the proposed amendment annexed thereto, be, and the same hereby is, denied; and it is further

ORDERED, that defendant's motion for an extension of time to file objections to the government's response to her § 2255 motion be, and the same hereby is, denied.